UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
------------------------------------------------------
HARCOURT LEACOCK et. al., Plaintiffs,

<u>**MEMORANDUM AND ORDER**</u>

-against-                                                                 08-CV-2401(DRH)(GRB)

NASSAU HEALTH CARE CORPORATION,
MICHAEL DELUCA, in his official and
individual capacity, and LARRY SLATKY, in
his official and individual capacity,

Defendants.
------------------------------------------------------X
**A P P E A R A N C E S :**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Blvd.
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.

**For the Defendants:**
**CLIFTON BUDD & DeMARIA, LLP**
420 Lexington Avenue
New York, New York 10170
By:    Sheryl Ann Orwel, Esq.

**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
By:    Brian J. Clark, Esq.

**HURLEY, Senior District Judge:**

Plaintiff  Harcourt Leacock ("Leacock" or "plaintiff") commenced this action against

defendants Nassau Health Care Corporation ("NHCC"), Michael DeLuca ("Deluca") and

Larry Slatky ("Slatky") (collectively "defendants") asserting claims of race-based

discrimination and retaliatory employment practices in violation of 42 U.S.C. § 2000(e)

(Title VII), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and New York's Human Rights Law, Executive Law § 296. (Sec. Am. Compl. ¶ 1, as Defs.' Ex. A). Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth below, the defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts, drawn from the parties' local Rule 56.1 statements, the pleadings, and prior decisions in this case, are undisputed unless otherwise noted.

*Procedural History*

In an Order dated June 13, 2008, this Court, adopting Magistrate Judge Orenstein's Report and Recommendation in its entirety, granted defendants' motion pursuant to Federal Rule of Civil Procedure 21 to sever into separate actions the claims of seven plaintiffs, including Leacock, who each claimed that defendants had discriminated against him or her based on race. (*See* 06-CV-4757, Docket No. 64 (Memorandum and Order, dated June 13, 2008)). In the same opinion, the Court also dismissed plaintiffs' Title VI claims in their entirety and their Title VII claims against all of the individual defendants, including defendants Deluca and Slatky. (*Id.* at 14-15.)

*The Defendants*

"Nassau Health Care Corporation ("NHCC") is a public benefit corporation created by the New York State legislature." (Defs.' R. 56.1 Stmt. ¶ 1.) "In or about September 1999, the Public Authorities Law authorized NHCC['s] acquisition of certain assets and operations from Nassau County relating to the provisions of health care services, including . . . the A. Holly Patterson Geriatrics Center (renamed A. Holly

Patterson Extended Care Facility) ("A. Holly Patterson").  *Id.*

Defendant DeLuca "was employed at NHCC for thirty-four years," and at the time he retired in 2005, he held the position of Executive Vice President and Chief Operating Officer.  (*Id.* ¶ 3.)  In that capacity, "DeLuca's responsibilities were to generally assist the then CEO, Richard Turan, to run the corporation."  (*Id.*)

Defendant Slatky, who originally worked for A. Holly Patterson as a consultant from November 2001, "was hired as Senior Vice President of NHCC in 2003."  (*Id.* ¶ 4; Dep. of Larry Slatky ("Slatky Dep.") at 8.)  As Vice President, "Slatky [was] responsible for the operation of A. Holly Patterson."  (Defs.' R. 56.1 Stmt. ¶ 4.)

*Plaintiff's Employment at A. Holly Patterson*

Plaintiff, a black male, began working for A. Holly Patterson as a part-time administrative assistant on April 24, 1981.  (Defs.' R. 56.1 Stmt. ¶ 5.)  "On August 3, 1984, Plaintiff started full-time at A. Holly Patterson as the Assistant Nursing Home Administrator I," with a Grade 17 salary of $23,692, which was set by the Nassau County Civil Service Commission.  (*Id.* ¶ 6.)  On April 6, 1990, plaintiff became an Assistant Nursing Home Administrator II and his Grade 17 salary became $43,469.  (*Id.*)  Then on May 5, 2000, plaintiff became an Assistant Administrator of A. Holly Patterson, and "[h]is salary, which was set forth by Civil Service as Grade 19, was $75,000."  (*Id.* ¶ 7.)  It is undisputed that "[o]n July 20, 2001, Plaintiff was downgraded back to his former job title of Assistant Nursing Home Administrator II because he did not pass his probation for the Assistant Administrator position," however, NHCC allowed him to retain his $75,000 salary.  (*Id.* ¶ 8.)

As part of plaintiff's position as Assistant Administrator, he was required to have a New York State Nursing Home Administrator license.  (*Id.* ¶¶ 9-10.)  "Pursuant to New York State

Department of Health Regulations, [such a] license is required to operate a nursing home," and

"[a]n individual(s) employed at the nursing home facility with such a license will register it with

the Department of Health as the Administrator of Record." (*Id.* ¶ 9.) The role of the

Administrator of Record, however, is disputed. While defendants claim that the Administrator

of Record "is [not] the individual who necessarily operates the facility," (*id.*), plaintiff claims

that pursuant to New York State Health Law Section 415.26, the facility is "under the

supervision of the administrator." (Pl.'s R. 56.1 Stmt. ¶ 9.) Section 415.26 also provides, *inter*

*alia*, that "[t]he administrator shall set an example for all staff members[,] . . . be readily

accessible to resident and staff for consultations[, and] . . . seek to involve staff at all levels in

developing and implementing an interdisciplinary approach to resident services." (*Id.*)

In 2001, plaintiff "registered with the Department of Health as the Administrator of

Record" (Defs.' R. 56.1 Stmt. ¶ 10), and it is undisputed that plaintiff was the Administrator of

Record until April 2003. (*Id.* ¶ 12.) According to defendants, during that period, A. Holly

Patterson used plaintiff's license because Roland C. Manning, the Vice President at the time, did

not have a license. (Defs.' Reply Mem. in Supp. at 2-3.) Plaintiff concedes that "[a]s the

Administrator of Record, [he] was not the Administrator of the facility and consequently [he]

was required to work under Manning . . . who was responsible for the operation of the facility."

(Defs.' R. 56.1 Stmt. ¶ 11.)

*Plaintiff's Complaints to the Office of Diversity*

"On February 22, 2002, Plaintiff's salary was increased from $75,000 to $81,000." (*Id.*

¶ 13.) In that same month and after receiving this raise, plaintiff made a complaint of

discrimination to NHCC's Office of Diversity ("O. D."), claiming that the increase was

insufficient. (*Id.* ¶¶ 25, 40.) "It is and was plaintiff's position [at the time he made his complaint

4

to the O.D.] that for the position he held, he should have been paid a salary that was close to those of DeLuca, Slatky, [Audrey] Marchand, [the Director of Nursing,] and [Leonard] Samansky, [an attorney retained by NHCC to work on corporate compliance]." (Pl.'s R. 56.1 Stmt. ¶ 26; Defs.' R. 56.1 Stmt. ¶¶ 31-34.) Thereafter, "[i]n November 2002, Plaintiff requested and received another salary increase of $11,000 totaling over $92,000 per year." (Defs.' R. 56.1 Stmt. ¶14.)

Plaintiff testified at his deposition that in January 2003, he met DeLuca in the parking lot of a social function and DeLuca told him "it would be in [his] best interest to withdraw [his 2002] complaint [with the O. D]." (Dep. of Harcourt Leacock at 96, as Pl.'s Ex. D.) DeLuca, however, denies ever making such a statement and it is undisputed that "DeLuca was actively involved in getting Plaintiff's [February 2002 and November 2002] salary increases." (Defs.' R. 56.1 Stmt. ¶ 14.) Shortly after, in February 2003, Plaintiff made a second complaint to the O. D. relating to his salary, "this time alleging he was not making a commensurate salary to Samansky." (*Id*. ¶¶ 33-34.)

On April 7, 2003, Slatky became Vice President and Administrator of Record of A. Holly Patterson. As defendants explain, Slatky was hired in the position formerly "occupied . . . by Manning," but "[u]nlike Manning, Slatky did have an administrator's license, and thus, A. Holly Patterson utilized Slatky's license [instead of plaintiff's]." (Defs.' Reply Mem. in Supp. at 3.) At that point, plaintiff was no longer the Administrator of Record. (Defs.' R. 56.1 Stmt. ¶ 12; Brewington Decl., Ex. M.) While defendants contend that "[n]o one replaced Plaintiff at his job," but rather "Slatky absorbed Plaintiff's duties," (*id*. ¶ 16), plaintiff claims that Slatky replaced plaintiff. (Pl.'s R. 56.1 Stmt. ¶ 16.) Further, plaintiff claims that defendants petitioned the Civil Service Board to reduce the educational qualifications of the Administrator

of Record from requiring a Bachelor's degree to requiring only a high school diploma so that

Slatky, who attended only approximately a year and a half of college, (Slatky Dep. at 17), could

be Administrator of Record.  (Pl.'s Mem. in Opp. to Summ. J. at 9.)

*Plaintiff's Termination*

On or about December 2003, NHCC eliminated plaintiff's job as Assistant

Administrator and laid off plaintiff.  (Defs.' R. 56.1 Stmt. ¶ 15.)  Defendants claim that the

layoff was caused by "NHCC['s] reduced . . . budget, [and] by among other things, a reduction

in its work force."  (*Id*.)  As defendants note, "Plaintiff's layoff . . . was one of one hundred

forty-nine (149) employees laid off" in 2003, including "[s]eventeen (17) other employees at A.

Holly Patterson."  (*Id*. ¶¶ 18-19.)  In addition, on January 3, 2002, "NHCC laid off

approximately four hundred (400) employees," and "on or about May 25, 2004, NHCC . . . [laid

off] another one hundred fifty-seven (157) employees."  (*Id*. ¶¶ 18-19.)  Thus, defendants assert

that plaintiff's "termination was one of over seven hundred (700) NHCC employees laid off in a

three-year period."  (*Id*. ¶ 20.)  "After plaintiff was laid off, he filed for retirement."  (*Id*.)

## DISCUSSION

## I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible

evidence in the form of affidavits, deposition transcripts, or other documentation

demonstrates the absence of a genuine issue of material fact, and one party's entitlement to

judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716

(2d Cir. 1994).  The relevant governing law in each case determines which facts are

material; "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving

party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. Plaintiff's Discrimination Claim Under Title VII

### A. *Legal Standard*

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar "burden-

shifting "formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under McDonnell Douglas and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) he belonged to a protected class, (2) was qualified for the position he held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola*, 42 F.3d at 716, or even "minimal." *Roge v. NYP Holdings, Inc*., 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 120 S. Ct. 2097,147 L. Ed. 2d 105 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co*., 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc*., 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII. *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim"). "[A]ccordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.*

**B.** *Application to Plaintiff's Discrimination Claim*

As described above, the Court begins its analysis by determining whether or not the plaintiff has made out a *prima facie* case. Here, defendant[1] concedes that "Plaintiff meets three

---

[1] Since the only remaining defendant subject to plaintiff's Title VII claims is NHCC, the use of "defendant" in Parts II and III of this opinion refers to NHCC.

elements of his *prima facie* case for race discrimination: he is black, he was qualified to perform his job and he was laid off," but defendant asserts that plaintiff "cannot establish that he suffered any alleged adverse employment action that occurred under circumstances giving rise to an inference of discrimination. (Defs.' Mem. in Supp. of Summ. J. at 13.)  Plaintiff alleges, however, that he can establish discriminatory intent because "Leacock was not paid an amount comparable to his title and position, nor was he paid an amount comparable to that of his similarly situated Caucasian colleagues performing duties comparable to him." (Pl.'s Mem. in Opp. to Summ. J. at 6).

Under a disparate treatment theory, a plaintiff can raise an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  When considering whether a plaintiff has shown that he was subjected to disparate treatment, the Second Circuit requires that the plaintiff demonstrate that he was "similarly situated in all material respects" to the individuals with whom he seeks to compare himself.  *Id.*  In addition, in order to make out a claim of disparate pay, plaintiff must show that he "was paid less than non-members of [his] class for work requiring substantially the same responsibility" and must in addition produce evidence of "discriminatory animus."  *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999) (quoting *Tomka v. Seller Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995)).

Here, plaintiff's bald assertion that he was "subjected to differential treatment as compared to the other similarly situated Caucasians," (Pl.'s Mem. in Opp. to Summ. J. at 7.) is merely conclusory and not supportive of his claim.  *See Guerrero v. Fire Dep't, City of N.Y.*, 2009 WL 1563532, at *9 (S.D.N.Y. June 2, 2009) (finding plaintiff's

11

evidence of unlawful termination insufficient because "conclusory allegations of discrimination, without more" do not meet the requirements under Rule 56(e) in order to defeat a summary judgment motion).

In addition, plaintiff's claim that he should have been paid similar to Slatky is unsupported because Slatky was not similarly situated to the plaintiff. (Pl.'s Mem. in Opp. to Summ. J. at 8.) Slatky, who originally worked for A. Holly Patterson as a consultant from November 2001, "was hired as Senior Vice President of NHCC in 2003." (Defs.' R. 56.1 Stmt. ¶ 4.) Plaintiff, on the other hand, never worked as a consultant for A. Holly Patterson or held a title above Assistant Administrator. Moreover, as plaintiff admits in his brief, Slatky was a "high-ranking supervisor[] or Administrative/Director[] at Defendant [Nassau University Medical Center] . . . directly and personally involved in the hire, fire, and transfer of employees . . . such as Plaintiff herein." (Pl.'s Mem. in Opp. to Summ. J. at 21.) In addition, as plaintiff concedes in his deposition, Slatky was his boss. (Leacock Dep. at 89.) Since plaintiff and Slatky did not occupy the same level of the corporate structure, they cannot be similarly situated. *See Ludwiczak v. Hitach Capital Amer. Corp.*, 528 F. Supp. 2d 48, 62 (D. Conn. 2007) ("Plaintiff cannot make a *prima facie* showing that she was paid less than non-members of her class for work requiring substantially the same responsibility because the employee to whom she compares herself . . . was the Plaintiff's supervisor and was senior to her in the Defendant's corporate structure."). In addition, plaintiff admits that Tom Loscalzo, a part-time Assistant Administrator at A. Holly Patterson, was the only employee at A. Holly Patterson who held a comparable position to Plaintiff, and that Loscalzo "made almost $40,000 less than Plaintiff on a pro-rata annualized

basis." (Defs.' R. 56.1 Stmt. ¶¶ 36-37.)  Therefore, plaintiff cannot maintain a disparate pay claim.[2]

Similarly, the Court finds unpersuasive plaintiff's argument that "Defendants' petition to the Civil Service Board to have the educational qualifications of an Administrator of Record changed and lowered from a Bachelor's or higher level degree from an accredited education institution, to requiring only a high school diploma [in order for Slatky qualify for the position], is further evidence that Plaintiff Leacock was subjected to disparate treatment at the hands of the Defendants."  (Pl.'s Mem. in Opp. to Summ. J. at 9.)  As discussed above, plaintiff and Slatky were not similarly situated.  Of particular importance here, is that the two employees differed in terms of experience.  Unlike plaintiff, Slatky had over 16 years of experience as an Administrator of Record.  Prior to being hired full time at NHCC, Slatky had been the Administrator of Record for several health care facilities, including Waterview Nursing Care Center from 1986 to 2002.  (Slatky Dep. at 15-16.)  This difference in experience is material for purposes of determining whether plaintiff and defendant were similarly situated.  *See Loucar v. Boston Market Corp.*, 294 F. Supp. 2d 472, 479 (2003) (finding that plaintiff was not similarly situated to employee who had five years of experience).  Since plaintiff and Slatky differed in terms of experience, plaintiff does not raise a genuine issue of fact that he suffered disparate treatment.

---

[2] Plaintiff does not pursue in his brief his claim in paragraph 26 of his 56.1 Statement that he should receive a similar salary to DeLuca, Marchand, and Samansky presumably because none of these employees maintained responsibilities similar to the plaintiff as DeLuca was the COO of NHCC, Marchand was the Director of Nursing, and Samansky was an attorney hired to work in corporate compliance.

Despite failing to make out any disparate treatment claim, the plaintiff does raise a genuine dispute as to whether "the fact that [plaintiff] was replaced by someone outside of his protected class . . . gives rise to an inference of discrimination." (Pl.'s Mem. in Opp. at 7 (internal quotation marks and citations omitted).) Specifically, plaintiff claims that discrimination can be inferred because Slatky replaced plaintiff as Administrator of Record. In each of the cases plaintiff cites to support this proposition, the plaintiff established a *prima facie* case of discrimination because a person outside of the plaintiff's protective group was either hired or promoted specifically to fill the plaintiff's former position. *Cook v. Arrowsmith Shelburne*, 69 F.3d 1235, 1238 (2d Cir. 1995); *Pesok v. Hebrew Union College – Jewish Institute of Religion*, 235 F. Supp. 2d 281 (S.D.N.Y 2002); *Darboe v. Staples, Inc.*, 243 F. Supp. 2d 5 (S.D.N.Y. 2003); *Tarshis v. Riese Org.*, 211 F.3d 30 (2d Cir. 2000).

Although the cases that plaintiff relies on in support of his claim are not completely analogous to the facts in this case, they raise a question of fact as to whether plaintiff was replaced by a person outside of his protected class. Here, Slatky, who was hired as Vice President, replaced not the plaintiff but Vice President Manning, and at all times, plaintiff retained the title of Assistant Administrator II. It is not disputed, however, that Slatky simultaneously took over as the Administrator of Record, a title plaintiff formerly held. As a result, there is a question of fact as to whether Slatky who "absorbed Plaintiff's duties," as defendant states, replaced the plaintiff as Administrator of Record. (Defs.' 56.1 Stmt. ¶ 16.) Indeed, Slatky himself wrote to the New York State Department of Health that he had been

"appointed Administrator of Record . . . with the title of Vice President at A. Holly Patterson Extended Care Facility *replacing* Harcourt Leacock. (Pl.'s Ex. M.) (emphasis added)

It is important to note that in each of plaintiff's cited cases, the court found that plaintiff's replacement established a *prima facie* case that the adverse action that accompanied his or her replacement (i.e., plaintiff's demotion or termination) occurred under circumstances giving rise to an inference of discrimination. Here, the alleged adverse action related to plaintiff's replacement was plaintiff's loss of the Administrator of Record title, which plaintiffs argue was a "demotion." (*See e.g.*, Pl.'s Mem. in Opp. to Summ. J. at 10.)[3] Therefore, plaintiff's replacement establishes a *prima facie* case that his demotion occurred under circumstances giving rise to an inference of discrimination. The Court is not persuaded, however, that plaintiff's termination approximately 10 months after his replacement occurred under circumstances giving rise to an inference of discrimination. Therefore, the remaining analysis deals only with the viability of plaintiff's claim that defendant discriminated against the plaintiff when it demoted him from the Administrator of Record position.

*Pretext*

Even if a reasonable juror could find that Slatky replaced plaintiff, such a finding is not sufficient on its own to defeat defendant's proffered reason for the

---

[3] Given Leacock's testimony at his deposition that his duties changed once he was no longer Administrator of Record and the testimony of Col. Vance Shaw, the Director of Diversity at NHCC, there is a genuine issue of fact that plaintiff's loss of title was in fact a demotion constituting adverse action. (*See* Leacock Dep. at 113-114; Shaw Decl. ¶¶ 51-52, as Pl.'s Ex. A ("[a]fter [plaintiff] was taken out of his position as Administrator of Record, he was stripped of any and all duties that were dignified and comparable to a man of his experience and education and was reduced to less than a file clerk").)

replacement, namely that it was no longer necessary to use plaintiff's license because Slatky had a license. *See Pesok*, 235 F. Supp. 2d at 287. "[U]nless plaintiff can point to evidence that reasonably supports a finding of discrimination," summary judgment is warranted. *Id*. at 286 (granting summary judgment where despite plaintiff's replacement by a person outside of his protected class, plaintiff raised no evidence that replacement was motivated by discrimination); *compare Cook*, 69 F.3d at 1240 (denying summary judgment where plaintiff's supervisor told her that her discharge was due to supervisor's "view that a man should have her job").

Here, plaintiff has not presented any evidence suggesting that plaintiff's replacement by Slatky was motivated by discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 515 ("[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.") (internal quotation marks omitted). In particular, DeLuca's alleged comment to the plaintiff recommending that he drop his complaint, upon which plaintiff's claim rests heavily, does not exhibit discriminatory intent. In considering whether a remark is probative of discrimination or whether it is a non-probative "stray remark," a court should consider the following factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *See Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (citations omitted).

Here, although DeLuca, the COO of NHCC, made the remark, there is no evidence that he was involved in any of the employment decisions about which plaintiff complains.  It is, however, undisputed that he was influential in helping plaintiff to obtain two salary raises.   Moreover, the statement, made informally in the parking lot of a social function approximately three months prior to plaintiff's replacement as Administrator of Record, was not part of the decision making process relating to plaintiff's replacement.  Furthermore, the content of the remark does not contain any evidence that defendant discriminated against the plaintiff on the basis of race.  Therefore, a reasonable juror could not find that the remark was discriminatory.

For the reasons stated above, the Court dismisses plaintiff's Title VII discrimination claims.

## III. Plaintiff's Retaliation Claim

### A. *Legal Standard*

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)).  "In order to present a prima facie case of retaliation under Title VII . . ., a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff."  *Kessler v. Westchester Cty. Dep't of*

*Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted). In addition,

the Supreme Court recently clarified the causation standard required by § 704(a)

stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that

his or her protected activity was a but-for cause of the alleged adverse action by the

employer," as distinct from "a motivating factor," which had previously been the standard in

the Second Circuit. [4] *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234,

*16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting

framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141. Once the employee

has established a *prima facie* case, the employer "must proffer a legitimate, non-

discriminatory reason for the adverse action. If it does so, then the burden shifts back to the

[employee] to demonstrate pretext." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87,

94-95 (2d Cir. 2001).

**B.** *Application to Plaintiff's Retaliation Claim*

Defendant does not seem to dispute that Whyte engaged in protected activity when he

complained to the O.D. in February 2002 and February 2003, but does dispute that NHCC

was aware of this activity and that a causal connection existed between the complaints to the

O. D. and the defendant's alleged adverse actions.

---

[4] Although "New York State Courts have yet to address the impact of the Supreme Court's recent holding in *Nassar* on the NYSHRL, nor has the Second Circuit provided . . . guidance as to this issue," this Court will continue to construe the NYSHRL as requiring the same elements as Title VII. *See Dall v. St. Catherine of Siena Med. Ctr.*, 2013 WL 4432354, at *19, n. 12 (E.D.N.Y. Aug. 14, 2013) (finding that "[s]ince the NYSHRL statutory language is the same [as Title VII], and the New York Court of Appeals has consistently stated that federal Title VII standards are applied in interpreting NYSHRL, this Court will continue to interpret the standard for retaliation under NYSHRL consistent with Title VII jurisprudence, as clarified by the Supreme Court in *Nassar*.")

*NHCC's Awareness of Plaintiff's Complaints*

Defendant argues "there is no evidence that the alleged retaliators, DeLuca or Slatky, knew that the Plaintiff had filed a charge of discrimination with the [O. D.] alleging race discrimination." (Defs.' Mem. in Supp. of Summ. J. at 18.) Plaintiff, however, "does not have to show that the individual supervisors who subjected him to adverse employment action knew of his age and race discrimination complaints." *Cunningham v. Consol. Edison Inc.*, 2006 WL 842914, at * 16 (E.D.N.Y. March 28, 2006). "Rather, it is enough to show that [defendant] had a 'general corporate knowledge.'" *Id.* (quoting *Gordon v. New York City Bd. Of Ed.*, 232 F. 3d 111, 116 (2d Cir. 2000). Here, NHCC had general corporate knowledge of plaintiff's complaint when plaintiff made his February 2002 and February 2003 complaints to the O. D. Since the O. D. "had the primary function of interceding on behalf of the employees of . . . the A. Holly [Patterson] Center employees, who were experiencing discrimination of some form within the workplace," a reasonable juror could conclude that NHCC was aware plaintiff's complaint related to discrimination. (Decl. of Col. Vance Shaw, Pl.'s Ex. A.) Therefore, plaintiff has raised a genuine issue of fact as to NHCC's knowledge of his protected activity.

*Causal Connection*

The Defendant claims that "the lapse of time between the alleged protected activity of complaining of discrimination to the Office of Diversity in [February] 2002, and in [February] 2003, to the time Plaintiff was laid off [in December 2003] and his subsequent retirement totally undercuts any retaliation claim." (Defs.' Mem. in Supp. of Summ. J. at 18-19.) The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the

exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F. 3d 545, 554 (2d Cir. 2001). Still, district courts in this circuit have found that a lapse in time greater than two months is insufficient to make out a *prima facie* retaliation case. *See Cunningham*, 2006 WL 842914, at * 19 (finding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Ponticelli v. Zurich American Ins. Group*, 16 F. Supp. 2d 414, 436 (finding that two and a half month period between plaintiff's complaint and termination was "hardly the close proximity of time contemplated . . . for allowing a plaintiff to establish the causal connection element of retaliation claim") (internal quotation marks omitted). Here, the ten months that passed between plaintiff's complaint to the O. D. in February 2003 and his termination in December 2003 do not permit a finding that plaintiff's complaint to the O. D. was causally connected to his termination.

Plaintiff also claims, however, that his loss of the Administrator of Record Title in April 2003 was an adverse employment action that was causally connected to his complaint to the O. D. in February 2003, approximately two months earlier. Plaintiff contends that "this title change was an adverse employment action against Plaintiff Leacock that constituted an infact demotion, and which diminished Plaintiff's opportunities and leverage for salary negotiations." (Pl.'s Mem. in Opp. at 15.)

What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related

retaliatory acts and harm.").  The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted).  Here, there is a question of fact as to whether plaintiff's loss of the title of Administrator of Record constituted an adverse action.  Construing the facts in the light most favorable to the plaintiff, a reasonable employee may have been dissuaded from making a discrimination complaint upon losing the responsibilities and duties that plaintiff claims were associated with the title of Administrator of Record.

The Court then must turn to an analysis of whether plaintiff's loss of title was causally connected to his February 2003 complaint.  Under *Nassar*, "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  133 S. Ct. at 2533.  "Therefore during the final stage of the burden shifting frame-work, the plaintiff must show that retaliation was a but-for cause of the adverse employment action."  *Dall v. St. Catherine of Siena Medical Ctr.*, 2013 WL 4432354, at *22, n. 15 (E.D.N.Y. Aug. 14, 2013)[5]  It is clear that "[w]hile temporal proximity [between the protected activity and the adverse action] alone may still be sufficient at the prima facie stage, it is not sufficient at the pretext stage."  *Id*. at *22, n. 15; s*ee El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal

---

[5] The Court notes that district courts have applied the Supreme Court's recent holding in *Nassar* differently, some performing the but-for analysis at the *prima facie* stage, and others considering but-for causation in the pretext analysis.  *Compare Rivera v. N.Y.C. Dep't of Correction*, 2013 WL 3297597, at *4 (E.D.N.Y. June 28, 2013) (analyzing but for causation in the *prima facie* case determination) *with Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 WL 3968748, at *14 (E.D.N.Y. Jul. 30, 2013) (analyzing but-for causation at the pretext stage).

proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").

Here, however, plaintiff has alleged more than temporal proximity between the complaint to the O. D. and his loss of title. Plaintiff also claims that DeLuca's statement that it would be in plaintiff's best interest to drop the complaint is evidence of retaliation. (Leacock Dep. at 96.) While defendant denies that DeLuca made this statement, viewing the facts in the light most favorable to the plaintiff, DeLuca's comment in January 2003, along with the close temporal proximity between the plaintiff's February 2003 complaint and his April 2003 loss of title raise a genuine issue of fact as to whether defendant's motive was retaliatory. Although DeLuca's remark did not pass muster as evidence of discrimination, it implies that defendant did not look favorably upon plaintiff's complaint and that in NHCC's view it was not in plaintiff's best interest to pursue it. Moreover, the remark, which plaintiff construes as a threat, raises a genuine dispute as to whether defendant retaliated against him for making a complaint. Therefore, it is best left to the trier of fact to determine whether defendant's reason for removing plaintiff from the position of Administrator of Record was pretextual.

### IV. Plaintiff's 42 U.S.C. § 1981 Claims

42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the right "to make and enforce contracts." This section prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida, N. Y.*, 375 F.3d 206, 224

(2d Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)).   As defendants concede, "[t]he Courts apply the same legal elements and burden-shifting analysis for a Title VII race discrimination claim as they do for [a race-based] employment discrimination claim under 42 U.S.C. § 1981."  (Pl.'s Mem. in Opp. of Summ. J. at 17.)  As a result, since plaintiff has not provided sufficient evidence to meet his burden of establishing a claim of discrimination under Title VII, to the extent his claims under  § 1981 are also based on discrimination, they must fail as well.  *See Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 605 (2d Cir. 2007) (quoting *Patterson*, 375 F.3d at 225) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.").

Similarly, retaliation claims under § 1981 are generally analyzed in the same manner as under Title VII.  *Acosta v. City of New York*, 2012 WL 1506954 at *8 (S.D.N.Y.  Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability.").   Since this Court has denied summary judgment with regard to plaintiff's Title VII retaliation claim, his § 1981 retaliation claim also survives.

## V. Plaintiff's 42 U.S.C. § 1983 Claims

Count IV of the plaintiff's complaint alleges that defendants "deprived Plaintiff Leacock of his rights . . . secured by the . . . "First Amendment, Fourteenth Amendment and other

laws in violation of 42 U.S.C. § 1983." (Sec. Am. Compl. ¶ 99, as Defs.' Ex. A.)

Plaintiff's only statement in his brief that could be related to any First Amendment claim is his assertion that "[f]iling a discrimination lawsuit or an administrative complaint is also protected under the First Amendment." (Pl.'s Mem. in Opp. to Summ. J. at 19.) While plaintiff's argument relating to this statement lacks clarity, he seems to be arguing that NHCC retaliated against him because of this lawsuit and/or his administrative complaint to the New York State Division of Human Rights. Plaintiff, however, filed a charge with the New York State Division of Human Rights on February 10, 2004, well after any of the alleged adverse actions occurred. (Pl.'s R. 56.1 Counterstatement ¶ 59.) Moreover, he did not file this lawsuit until 2008. Therefore, any of defendants' alleged adverse actions could not possibly have been in retaliation for plaintiff's administrative complaint or this lawsuit.

Plaintiff also argues that "[r]ace-based discrimination may be actionable under § 1983 as a violation of equal protection." (Pl.'s Mem. in Opp. to Summ. J. at 18.) Moreover, plaintiff concedes regarding Equal Protection claims based on race discrimination that "the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII." (Pl.'s Mem. in Opp. to Summ. J. at 19.) Here, since the Court has already dismissed plaintiff's Title VII discrimination claims, plaintiff's equal protection claim also must fail.

Plaintiff's brief makes no mention of any due process claim, but to the extent Count IV of the Complaint asserts a § 1983 claim predicated on a violation of the Due Process Clause of the Fourteenth Amendment, his claim is dismissed because there is no evidence that plaintiff, who was an at-will employee, was deprived of a property or liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) ("To state a Section 1983 claim

[premised upon a due process violation], a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process.).

## *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment pursuant to Rule 56 is granted in part and denied in part. Defendants' motion is granted to the extent defendants sought to dismiss plaintiff's discrimination claims pursuant to Title VII, NYSHRL Executive Law § 296, and § 1981, and also granted as to plaintiff's First and Fourteenth Amendment claims. Defendants' motion is denied to the extent that defendants sought dismissal of plaintiff's retaliation claims pursuant to Title VII, NYSHRL Executive Law § 296, and § 1981.

**SO ORDERED.**

Dated: Central Islip, New York
      September 11, 2013

                                       _____/s/_____

                                       Denis R. Hurley
                                       United States District Judge