| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------ X<br>HARCOURT LEACOCK,<br><br>            Plaintiff,<br><br>  -against-<br><br>NASSAU HEALTH CARE CORPORATION,<br>MICHAEL DELUCA, and LARRY SLATKY<br><br>            Defendants.<br>------------------------------------------------------------------------ X | <u>For Online Publication Only</u><br><br>**ORDER**<br>08-CV-02401 (JMA)(GRB)<br><br><br>**FILED**<br>**CLERK**<br>5/25/2018 2:21 pm<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE** |

APPEARANCES:

  Frederick K. Brewington
  Law Offices of Frederick K. Brewington
  556 Peninsula Boulevard
  Hempstead, NY 11550
    *Attorney for Plaintiff*

  Scott A. Korenbaum
  Law Office of Scott A. Korenbaum
  11 Park Place, Suite 914
  New York, NY 10007
    *Attorney for Plaintiff*

  Nicholas Marco Reiter
  Allison Brooke Gotfried
  Brian Joseph Clark
  Venable LLP
  Rockerfeller Center
  1270 Avenue of the Americas, 24th Floor
  New York, NY 10020
    *Attorneys for Defendants*

**AZRACK, United States District Judge:**

Plaintiff Harcourt Leacock ("Leacock" or "plaintiff") brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and New York State Human Rights Law, Exec. Law § 296 ("NYSHRL") against defendants Nassau Health Care Corporation ("NHCC"), Michael DeLuca ("DeLuca") and Larry Slatky ("Slatky") (collectively, "defendants"). Plaintiff alleges that defendants unlawfully retaliated against him because of complaints of race discrimination that Leacock made to NHCC in February 2002 and February 2003. Specifically, plaintiff alleges that defendants unlawfully retaliated against him when (1) his "Administrator of Record" title was removed in April 2003; and (2) when he was terminated in December 2003.

A jury trial on plaintiff's claims took place from December 1, 2017 through December 5, 2017. Prior to trial, the Court granted defendants' request to bifurcate the trial as to liability and damages. At the close of the evidence on liability, defendants made a motion under Federal Rule of Civil Procedure 50 for judgment as a matter of law (the "Rule 50 Motion") as to (1) plaintiff's "Administrator of Record" claim, (Tr. 433); (2) plaintiff's claims against DeLuca, Chief Operating Officer of NHCC, (Tr. 435); and (3) plaintiff's claim concerning "but for" causation in relation to plaintiff's termination. (Tr. 436.) The Court reserved decision on defendants' motion.

On December 5, 2017, the jury returned a unanimous verdict, concluding that plaintiff proved "by a preponderance of the evidence that defendant Nassau Health Care Corporation unlawfully retaliated against plaintiff when plaintiff's employment was terminated," but finding for defendants on the "Administrator of Record" claim, and finding no individual liability on behalf of Slatky or DeLuca. (ECF No. 108.)

2

Following the verdict, and prior to the jury being dismissed, defendants objected to the verdict as inconsistent and renewed NHCC's Rule 50 Motion. (Tr. 523-24.) As plaintiff's brother had passed away the previous day, both parties requested that the jury be excused and to impanel a second jury for damages if necessary. (Tr. 525.)

Pending now before the Court is defendant NHCC's renewed Rule 50 Motion, and, in the alternative, motion for a new trial pursuant to Fed. R. Civ. P. 59 (the "Rule 59 Motion"). For the reasons stated below, NHCC's Rule 50 Motion is DENIED and its Rule 59 Motion is GRANTED.

## I. BACKGROUND

Leacock was employed at A. Holly Patterson Geriatrics Center ("Holly Patterson"), which is part of the NHCC, from 1981 until his termination on December 30, 2003. (Tr. 279, 282.) Leacock started working at Holly Patterson as an Administrative Assistant in 1981, eventually became an Assistant Administrator, and in 1990 was promoted to the civil service position of "Assistant Nursing Home Administrator II." (Tr. 130, 279.) In 2000, Leacock also acted as "Administrator of Record" of Holly Patterson, a position created by the New York State Department of Health. (Tr. 279, 280.)

Believing that other administrators at the neighboring nursing home were receiving a higher salary than he, Leacock filed a complaint in February 2002 (the "2002 Complaint") with the Office of Diversity at NHCC, which was established by NHCC to handle complaints concerning discrimination. (Tr. 282-83.) Leacock testified that although he received a raise following his first complaint, bringing his salary up to $92,000, he did not deem this to be sufficient. (Tr. 286.)

During this period, Slatky, who at the time was a consultant with Holly Patterson, worked with Leacock to help run the nursing home. (Tr. 284.) Leacock filed another complaint in

3

February 2003 with the Office of Diversity (the "2003 Complaint"), alleging racial discrimination and raising the fact that Slatky was making $300 an hour as a consultant. (Tr. 289-90; Pl. Ex. 3.) Leacock explained that he raised the issue of Slatky's fees because he felt that there was "a discriminatory system that was in place that [he] didn't like," and that Slatky (who is Caucasian) was paid as a consultant more than Leacock. (Tr. 289.) Leacock never received a determination on his complaint. (Tr. 291.)

Slatky became Vice President of Holly Patterson on April 1, 2003 as well as the Administrator of Record on April 7, 2003, replacing Leacock as Administrator of Record. (Tr. 126, 291). As Vice President, Slatky became responsible for the day-to-day operation of Holly Patterson. (Tr. 126.)

While Leacock described his and Slatky's working relationship as initially "wonderful," he testified that after he filed the February 2003 Complaint, the relationship became more negative and "hostile." He testified that Slatky changed Leacock's responsibilities, giving him what he believed were menial tasks, and prevented him from attending certain meetings, among other things. (Tr. 285; 291-92; 316-17.) Leacock also testified that he received reprimands by Slatky following the complaint, which Leacock characterized as "unnecessary" and "not truthful". (Tr. 293-97.)

On the other hand, Slatky testified that in his new role he was trying to implement a formal system because "[p]eople basically did whatever they wanted to do. And that's why the nursing home not only was losing money, but had terrible State Department health surveys." (Tr. 138.) Slatky testified that he "tried to create structure," which Leacock did not like, explaining that he needed to set parameters and that there had to be accountability and responsibility when things were given to Leacock to do. (Tr. 138.) Slatky explained that he instructed plaintiff to stop

4

attending board meetings at NHCC after Slatky became Vice President because it did not make sense for both him and Slatky to attend and that Leacock's time could be better served by staying at the nursing home and performing his duties. (Tr. 135-37.)

Leacock testified that he regularly spoke to Slatky about the 2003 Complaint, explaining to him that he was not receiving the appropriate salary, during which conversations the issue of discrimination was raised. (Tr. 302.) Leacock further testified that Slatky told him to drop his complaint "on a regular basis." (Tr. 309-10.) According to Leacock, Slatky told him "if you don't change the complaint, I want you gone" and badgered Leacock every day, three or four times a week. (Tr. 309.)

Leacock also testified that other higher-ups at Holly Patterson told him to drop his complaint. In January 2003, at a Christmas party, DeLuca told him it would be in his best interest to drop his complaint. (Tr. 307.) DeLuca adamantly denied ever asking Leacock to withdraw his complaint. (Tr. 269.) According to plaintiff, at the same party, the CEO of NHCC, Richard Turan ("Turan") also asked Leacock to drop the complaint, stating he was already investigating to see what he could do. (Tr. 308.) Turan did not testify at trial.

Slatky testified to meeting with some combination of Vance Shaw, a representative of the Office of Diversity, and Leacock various times in 2003 to discuss communication between Leacock and Slatky. (Tr. 137.) Slatky stated, "I told Mr. Shaw that sometimes Harry feels that he's being yelled at, and that's not my intent. I'm just trying to set structure up for him." (Tr. 140.) Slatky denied that plaintiff ever complained to him about race discrimination, and stated, "I don't believe we ever talked about his complaint with diversity. We always talked about salary." (Tr. 141.)

5

Slatky also testified that when he became a vice president in 2003, he had two primary responsibilities: "creating efficiencies of operation both at the medical center, at the clinic and nursing home, and looking at staffing patterns after we created efficiencies to determine if they were appropriate and if layoffs could take place to try to balance the budget." (Tr. 143.) Slatky further testified that he was in charge of all layoffs for the entire corporation. (Id.) According to Slatky, although two previous layoffs occurred prior to 2003, Holly Patterson had lowered its bed census (the total licensed beds at the nursing home), and additional cuts were needed. (Id.) Slatky testified that in 2003, Holly Patterson was losing around $10 million a year. (Tr. 145.) Slatky was involved in administering additional layoffs in late 2003. (Tr. 146.) Slatky described the process as follows:

> I get a list from the human resource department of all the titles…of the departments and their salary. And normally I'm given a dollar amount by the CFO that I have to accomplish. So if we're losing 10 million, then we have to lower this by 30 percent and you need to find $3 million worth of cuts in the facility….Traditionally the largest expense is always payroll because of the benefit structure…So I would put together my list understand the efficiencies we created, the census and then I would provide that list and my recommendations of the CFO.

(Tr. 146-47.) Slatky testified that he followed this process in 2003 and that he selected plaintiff's job title, which was one of 150 positions selected for layoff, explaining:

> By that period of time I was there for three years in total, my consulting and my regular work. All the department heads at that point in time were reporting to me. I felt that I could handle all the responsibilities of the day-to-day operations without having an assistant, save that money and hopefully preserve other direct care positions. And that's the decision I made, that it was better for the day-to-day operations for me to work the way I needed to work to get things done and give up that title.

(Tr. 147.) Slatky's recommendation was approved by the Chief Financial Officer, Gary Bie. (Tr. 148.) Slatky testified that he retired from NHCC in 2014 and that after Leacock was laid off, his job title remained eliminated during the following fourteen years. (Tr. 146-50; 397-

6

98.) Slatky further testified that while he initially made $200,000 as Vice President of Holly Patterson, during his 11-year tenure at NHCC he received a $125,000 salary increase. (Tr. 41.)

## II. DISCUSSION

### A. **Rule 59 Motion for a New Trial**

The Court will first address NHCC's Rule 59 Motion for a New Trial. Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

In its Rule 59 Motion, NHCC argues that the Court should grant a new trial because the jury's verdict against NHCC is irreconcilable with its verdict in favor of Slatky and DeLuca. NHCC also asserts that a new trial is warranted because the jury's verdict is against the weight of the evidence.

As explained in further detail below, the Court finds that the jury's verdict in this case is against the weight of the evidence and is granting a new trial on that basis. Accordingly, it is unnecessary for the Court to determine whether the purported inconsistency in the jury's verdict warrants a new trial.

As a threshold matter, plaintiff argues that NHCC waived the argument that the verdict is against the weight of the evidence because it advanced no argument in support of its motion for a new trial other than an inconsistent verdict. (Pl. Br. at 12.) The Court disagrees that NHCC waived this argument. NHCC argued within its initial post-trial brief that a Rule 59 motion should be granted "when the verdict is against the weight of the evidence." (Def. Br. at 22 (quoting Buchwald v. Renco Grp., 539 B.R. 31, 38 (S.D.N.Y. 2015)). NHCC also discussed the record in depth and argued extensively in its brief that the evidence was insufficient to sustain the jury's

7

verdict in favor of plaintiff. (Def. Br. 13-21.) The Court will therefore consider whether the verdict is against the weight of the evidence.

"A decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417-18 (2d Cir. 2012) (quoting Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 635 (2d Cir. 2002)). Though a trial judge "is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner . . . the court should only grant such a motion when the jury's verdict is egregious." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (quoting Dunlap–McCuller v. Riese Organization, 980 F.2d 153, 158 (2d Cir. 1992)). In determining whether the jury's verdict is so "seriously erroneous" as to justify a new trial, the trial judge is free to weigh the evidence and "need not view it in the light most favorable to the verdict winner." Farrior, 277 F.3d at 634-35 (quoting DLC Mgmt. Corp., 163 F.3d at 134).

Slatky's testimony concerning his proffered reason for plaintiff's elimination was virtually unrebutted. There was no evidence at trial contradicting Slatky's testimony that the corporation's financial woes necessitated layoffs. Slatky testified that plaintiff's position was eliminated during the 2003 layoffs at NHCC because of these financial difficulties and because Slatky could absorb plaintiff's responsibilities. Slatky also testified that he performed those responsibilities until his retirement in 2014, and that plaintiff's position has remained eliminated after plaintiff's layoff. (Tr. 146-50; 397-98.) Plaintiff has not pointed to any evidence undermining or contradicting Slatky's proffered reason for eliminating plaintiff's position. Notably, there is no evidence that: (1) a different position other than plaintiff's could or should have been eliminated; (2) that Slatky could have absorbed the duties of another position, particularly another position with plaintiff's relatively high salary; or (3) that Slatky was not able to or did not in fact absorb plaintiff's

8

responsibilities after he was laid off. Although plaintiff stresses that Slatky's salary continued to rise, the fact that Slatky's received a $125,000 raise over the 11-year period from when he became Vice President in 2003 until his retirement in 2014 is simply not probative of whether Leacock was retaliated against in 2003. (Pl. Br. at 11; Tr. 41.)

In addition, given Leacock's inconsistent and unfocused testimony throughout the trial, the Court does not find him credible on multiple points. For example, the Court does not find credible Leacock's testimony that, on a daily basis, Slatky repeatedly told Leacock to withdraw his complaint and that Slatky wanted him gone if he failed to do so. Nothing in the record suggests there is any rationale for Slatky to make such open and frequent threats. (Tr. 308-09, 350.)

In weighing the evidence and making its credibility determination, the Court finds that the jury reached a seriously erroneous result and that its findings of liability constitute a miscarriage of justice. The Court cannot conclude that the record demonstrates that but-for Leacock's complaints, Slatky would not have eliminated Leacock's position, and that NHCC would not have laid off Leacock during the December 2003 layoff.

NHCC also contends that a new trial is warranted because the jury's verdict is inconsistent. Defendants objected to the Court's proposed verdict form at the charge conference, and objected to the verdict as inconsistent following the verdict and prior to the jury being dismissed (Tr. 445:22-446:14; 523-24.) In its Rule 59 motion, NHCC argues that the jury's verdict against NHCC cannot be reconciled with the determination that neither Slatky nor DeLuca retaliated against plaintiff when NHCC terminated his employment because Slatky and DeLuca were the only two alleged decision-makers in the case. (Def. Br.at 22.)

As the Court is already granting a new trial on the basis that the verdict is against the weight of the evidence, it is unnecessary to decide defendant's claim that a new trial is warranted because

of the purported inconsistency in the jury verdict, where NHCC – but neither Slatky or DeLuca – was held liable for retaliation. The Court, however, notes that this is a close question. Courts in this circuit go through great lengths to reconcile seemingly inconsistent verdicts. See Matusick v. Erie County Water Auth., 757 F.3d 31, 52 (2d Cir. 2014); Cash v. County of Erie, 654 F.3d 324, 333-34 (2d Cir. 2011). However, given the lack of evidence that anyone else other than Slatky was involved in selecting plaintiff for termination, it is not clear that there is any viable theory of the case where a jury could hold NHCC – but not Slatky – liable for retaliation.

Further, plaintiff argues that given the Court's instructions, the jury could have found NHCC liable for Slatky's actions under a cat's paw theory, but could have found Slatky not liable because although he recommended that Leacock's position be eliminated, Slatky did not himself take the adverse employment action. It is not clear how this argument can be squared with the Court's broad charge concerning individual liability, which instructed the jury that an individual is liable for unlawful retaliation if he "personally participated in the unlawful retaliation." (Tr. 508.) It is not clear how Slatky (who allegedly threatened Leacock on a daily basis) could be the driving force behind Leacock's termination, but not have personally participated in the unlawful retaliation. Again, it is unnecessary to resolve this question because the Court has already determined a new trial is warranted because the verdict is against the weight of the evidence.[1]

Accordingly, defendant NHCC's Rule 59 Motion for a New Trial is GRANTED.

B. **Rule 50 Motion for Judgment as a Matter of Law**

In its Rule 50 Motion, NHCC argues that a reasonable jury could not conclude: (1) that plaintiff actually complained about race discrimination; (2) that Slatky actually knew that plaintiff

---

[1] The Court notes that if the jury's verdict were, in fact, inconsistent, the Court would exercise its discretion to grant a new trial on that basis.

complained of race discrimination prior to his layoff; and (3) that plaintiff's complaints were the but-for reason Slatky selected plaintiff for layoff on December 30, 2003.

"A post-trial Rule 50(b) renewal motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury." Bracey v. Bd. of Educ. of Bridgeport, 368 F.3d 108, 117 (2d Cir. 2004) (citations omitted). "Rule 50(a) also provides that the motion *must specify* the judgment sought and *the law and facts that entitle the movant to the judgment* . . . The specificity requirement is obligatory." Lore v. City of Syracuse, 670 F.3d 127, 152 (2d Cir. 2012) (internal quotations and citations omitted) (emphases in original). "Rule 50 does not permit a party to move for judgment as a matter of law for the first time after a verdict has been entered." Ramos v. County of Suffolk, 707 F. Supp. 2d 421, 426 (E.D.N.Y. 2010).

A renewed motion for judgment as a matter of law under Rule 50(b) can be granted "only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor." Doctor's Assocs. Inc. v. Weible, 92 F.3d 108, 111-12 (2d Cir. 1996) (quoting Sirota v. Solitron Devices, Inc., 673 F.2d 566, 573 (2d Cir. 1982)). A "district court may set aside a jury's verdict pursuant to Rule 50 only where [1] there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [2] there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 127-28 (2d Cir. 2012) (internal quotation marks omitted).

The Court agrees with plaintiff that NHCC did not preserve its first and second grounds for its Rule 50 Motion, because defendants' counsel did not make a Rule 50(a) motion on these

11

points. See Lore, 670 F.3d at 152 ("A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter.") Accordingly, NHCC waived its right to seek judgment as a matter of law as to whether: (1) plaintiff actually complained about race discrimination; and whether (2) Slatky actually knew that plaintiff complained of race discrimination prior to his layoff. (Tr. 433-36.)[2]

As to its third ground for its Rule 50 Motion, which NHCC preserved, NHCC argues that a reasonable jury could not have found that plaintiff's complaints were the but-for reason NHCC terminated plaintiff's employment. (Tr. 436; Def. Br. at 17.) As previously explained, Slatky testified at trial that NHCC terminated plaintiff's employment during a company-wide layoff in 2003, during which time it laid off 150 employees, as a cost saving measure in response to financial struggles. (Tr. 124-5; 147; 366-69; 397-98.) Defendant argues that since it has never filled plaintiff's eliminated position at any time during the fourteen years since plaintiff's layoff, no reasonable jury could have concluded that, but for plaintiff's complaints, NHCC would not have terminated his employment. (Def. Br. at 18.) Defendant argues that: (1) these facts satisfy NHCC's burden to establish a legitimate, non-retaliatory reason for plaintiff's layoff; and (2) plaintiff failed to prove pretext and that the complaints were in fact the but-for reason Slatky selected plaintiff for layoff. (Def. Br. at 17-20.)

The Court views this as a close question. As explained above, plaintiff did not point to any evidence rebutting NHCC's stated reason and decision to select plaintiff's position for layoff; nor did plaintiff challenge the fact that plaintiff's position was not replaced for the following fourteen years. However, without making any credibility determinations, the Court cannot conclude, in

---

[2] Even if NHCC did preserve its first and second grounds for its Rule 50 Motion, the Court would deny its motion, as there was sufficient evidence for a reasonable jury to conclude that plaintiff complained of race discrimination and that Slatky knew that plaintiff complained of race discrimination.

12

viewing the evidence in the light most favorable to the non-movant and considering Leacock's testimony that Slatky repeatedly told him to withdraw his complaint, that there is a "a complete absence of evidence" supporting the verdict, such that a reasonable juror would have been compelled to accept the view of the defendants.  See Bucalo, 691 F.3d at 127-28.

Defendant NHCC's Rule 50 Motion for Judgment as a Matter of Law is therefore, DENIED.

### III. CONCLUSION

For the reasons stated above, defendant NHCC's Motion for Judgment as a Matter of Law is DENIED, and its Motion for a New Trial is GRANTED.

**SO ORDERED.**

Date: May 25, 2018
Central Islip, New York

                                                              /s/ (JMA)
                                                       Joan M. Azrack
                                                       United States District Judge